UNITED STATES DISTRICT COURT                    ELECTRONIC PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

ELIZABETH THOMAS,

                                    Plaintiff,                    MEMORANDUM AND ORDER

                - versus -
                                                                 11-CV-3656 (JG) (RML)

JP MORGAN CHASE, N.A., BARRETT,
DAFFIN FRAPPIER TURNER & ENGEL LLP
(*collectively*) BARRETT , BURKE, WILSON,
CASTLE DAFFIN & FRAPPIER, LLP.,
DOLAN COMPANY (*collectively*)
AMERICAN PROCESSING COMPANY
NATIONAL DEFAULT EXCHANGE
HOLDING ("NDEx"), MERSCORP INC.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., their
Executives, Directors, Shareholder and
Employees, JOHN DOES 1-100,

                                    Defendants.

A P P E A R A N C E S :

          ELIZABETH THOMAS
                    c/o Robert Thomas
                    8202 Terra Valley Lane
                    Tomball, Texas 77375

                    Plaintiff, *Pro Se*

          FORCHELLI, CURTO, DEEGAN, SCHWARTZ,
          MINEO, COHN & TERRANA LLP
                    The Omni
                    333 Earle Ovington Boulevard
                    Suite 1010
                    Uniondale, New York 11553
          By:      Jeffrey G. Stark

                    Attorneys for Defendants Barrett Daffin
                    Frappier Turner & Engel, LLP

BAKER BOTTS L.L.P.
      30 Rockefeller Plaza
      New York, New York 10112
By:    W. Zachary Hughes

      Attorneys for Defendants The Dolan
      Company, American Processing Company,
      LLC and NDeX West, LLC

JOHN GLEESON, United States District Judge:

      Elizabeth Thomas commenced this *pro se* action on July 27, 2011, asserting claims arising from an alleged scheme by the Defendants to generate false loan documents that they use to extort money and property from homeowners such as Thomas.  Defendant Barrett Daffin Frappier Turner & Engel, LLP ("Barrett")[1] has moved to dismiss the claims against it for lack of personal jurisdiction.  Defendants The Dolan Company, American Processing Company, LLC and NDeX West, LLC (collectively, the "Dolan Defendants"),[2] have moved to dismiss on a variety of procedural and substantive grounds, including that the claims are barred by the doctrine of judicial estoppel.  For the reasons set forth below, the motions to dismiss are granted.

## BACKGROUND

A.    *Factual Background*

      On October 28, 2010, the Defendants sent Thomas a notice of default, a notice of substitute trustee and a notice of sale in connection with a mortgage loan she had obtained when

---

[1]    Barrett was formerly known as Barrett Burke Wilson Castle Daffin & Frappier, LLP.  It is referred to in Thomas's filings as "Barrett, Daffin, Frappier, Turner & Engel LLP (*collectively*) Barrett, Burke, Wilson, Castle, Daffin, & Frappier, LLP."

[2]    NDeX West, LLC is a subsidiary of American Processing Company, LLC, which is in turn a subsidiary of The Dolan Company.  Thomas's second amended complaint appears to substitute National Default Exchange Holding for NDeX West, LLC.

purchasing a home in Texas.  *See* Second Am. Compl. ¶ 21, ECF No. 53-1.[3]  These documents were fraudulent in several respects.  The notice of default falsely stated that Chase Home Finance LLC was Thomas's mortgagee and the holder of her note and deed of trust and that it had elected to accelerate the maturity of her debt.  *Id.* ¶¶ 24–25, 29–30.  It also falsely stated the amount of her indebtedness.  *Id.* ¶ 26.  The notice of sale falsely stated that Mortgage Electronic Registration System Inc. ("MERS") was the original mortgagee.  *See id.* ¶¶ 27–28.  The notice also confused Thomas regarding her rights and threatened action that could not lawfully be taken.  *See id.* ¶¶ 41–42.

On November 5 and 10, 2010, and several times thereafter, Thomas and her prior attorney sent letters to Barrett disputing the debt and requesting verification.  *See, e.g.*, *id.* ¶¶ 31–34.  Thomas never received any response.  *See id.* ¶ 33.  On December 15, 2010, and again on January 15, 2011, J.P. Morgan Chase N.A. reported the debt to a credit bureau but failed to state that the debt was in dispute.  *See id.* ¶¶ 57–58.

On November 8, 2010, the Defendants wired and filed a notice of default, a notice of substitute trustee, an affidavit of default and a notice of sale.  *See id.* ¶¶ 89–92.  These documents contained the same kind of false information as that in the documents sent to Thomas on October 28, 2010.  *See id.*

The Defendants acted in order to "extort" money from Thomas by forcing her to pay a debt or lose her home when, in fact, no debt was due.  *See, e.g.*, *id.* ¶ 91.  As a result of the Defendants' actions, Thomas was forced to file for bankruptcy.  *See id.* ¶ 44.

According to Thomas, these actions were part of a much broader scheme to defraud.  This scheme involves the Defendants' use of a software program to generate fraudulent

---

[3]     The facts are drawn from the well-pleaded allegations in Thomas's second amended complaint, which are assumed to be true for purposes of this motion only.

mortgage documents, which are then used in an attempt to extort money or property from thousands of homeowners. *See, e.g.*, *id.* ¶ 73.

In this action, Thomas claims violations of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the Truth in Lending Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act. She also asserts several common law claims sounding in fraud as well as a claim for intrusion upon seclusion.

B.    *Procedural Background*

1.    *Prior Litigation*

Thomas filed a lawsuit in the United States District Court for the Southern District of Texas against MERS and various banks on October 21, 2010. *See* Compl., *Thomas v. Mortg. Elec. Registration Sys., Inc.*, No. 10-4320 (S.D. Tex. Oct. 21, 2010).[4] She purported to assert claims on behalf various counties in Texas, alleging that the named defendants had deprived the counties of recording fees. They allegedly did so by falsely designating MERS as a mortgagee, beneficiary or nominee of the lender on various mortgage documents in order to transfer interests in mortgage loans without recording the assignment of the underlying notes or deeds of trust and paying the accompanying fees. *See, e.g.*, *id.* ¶¶ 15–16, 33–34, 37, 41, 43. On January 3, 2011, Thomas filed an amended complaint in the Texas lawsuit, naming Barrett and "NDex W INC" as defendants and asserting claims, now on her own behalf, similar to those in the present action. They included a claim that Barrett sent her fraudulent mortgage documents

---

[4]    For reasons that are unclear, Thomas's Texas lawsuit was initially sealed. On January 3, 2011, Thomas moved to unseal the case and on January 31, 2011, the court granted that motion.

on October 28, 2010.  *See, e.g.*, Am. Compl. ¶ 57, *Thomas v. Mortg. Elec. Registration Sys., Inc.*, No. 10-4320 (S.D. Tex. Jan. 3, 2011).

While her lawsuit was pending, Thomas petitioned for bankruptcy relief pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas on December 3, 2010.  *See* Pet., *In re Thomas*, No. 10-40785 (Bankr. S.D. Tex. Dec. 3, 2010).  She identified her bankruptcy case as a "no asset" case, meaning that she had no nonexempt assets that could be used to repay her debts.  *See id.*  She also filed a schedule of her assets, which listed her residence, clothing and other items, but not any legal claims.  On January 25, 2011, Thomas filed an amended schedule of assets, which again did not include any legal claims.  On March 1, 2011, the bankruptcy court granted Thomas a discharge and closed the case.

On February 24 and 25, 2011 – a few days before the discharge – Thomas commenced two adversary proceedings in the bankruptcy court, the subject matter of which was somewhat related to that in her lawsuit in Texas district court.  In the first, Thomas sought a declaration that a lien on her property claimed by Chase Home Finance LLC was void, asserting that any assignment of her mortgage loan to it had been improper.  In the second, she purported to bring a class action alleging that Barrett and the Dolan Defendants were engaged in unlawful fee-splitting and had defrauded the bankruptcy courts.  On April 28, 2011, the bankruptcy court dismissed both adversary proceedings for lack of subject matter jurisdiction, noting that the case was closed.

That same month, the Defendants had moved to dismiss Thomas's claims in her lawsuit in Texas district court.  The Defendants argued, *inter alia*, that Thomas's claims were barred by the doctrine of judicial estoppel because she had not disclosed any legal claims among

her assets during the bankruptcy proceeding.  After their motions had been filed, Thomas voluntarily dismissed the case on April 28, 2011.

On May 27, 2011, Thomas moved to reopen her bankruptcy case.  That same day, she also filed an amended schedule of assets, which listed her legal claims as an asset for the first time.  On July 1, 2011, Thomas asked to withdraw her motion to reopen, citing unspecified safety concerns.  On July 5, 2011, the bankruptcy court granted the motion to withdraw.

### 2.     *Litigation in This Court*

Thomas commenced this action on July 27, 2011.  After several of the Defendants had moved to dismiss her original complaint, Thomas was granted leave to file an amended complaint.  She filed her first amended complaint, but later disavowed its contents and sought leave to file a supplement to the first amended complaint.  I granted her leave and construed her supplement as a second amended complaint.  The Defendants declined the opportunity to file supplemental briefs addressing the second amended complaint, stating that they believed they could rely on their already-filed papers.

### DISCUSSION

Barrett has moved to dismiss for lack of personal jurisdiction.  The Dolan Defendants have moved to dismiss on a variety of grounds, including that the claims are barred by the doctrine of judicial estoppel.  I will address Barrett's personal jurisdiction argument first and the Dolan Defendants' judicial estoppel argument second.  Because I agree with the Dolan Defendants regarding judicial estoppel, I need not address their other arguments in support of dismissal.[5]

---

[5]      I do consider and reject the Dolan Defendants' argument that Thomas lacks Article III standing because she has not alleged she suffered an injury-in-fact.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

A.      *Personal Jurisdiction*

    1.      *Standard of Review*

        "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  At the pleadings stage, this burden may be met by "legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks and citations omitted).  "[T]he Court may rely upon materials that are outside the pleadings, including any affidavits submitted by the parties," *Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 507 (E.D.N.Y. 2011), but "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker*, 261 F.3d at 208 (internal quotation marks and citation omitted).

    2.      *Analysis*

        Barrett is a Texas law firm and has submitted an affidavit stating that it does not provide legal services in New York and has no New York operations.  *See* Engel Aff. ¶¶ 7–14, ECF No. 22.  It argues that it therefore is not subject to personal jurisdiction in New York.  In response, Thomas asserts two grounds for personal jurisdiction over Barrett.  First, she argues that personal jurisdiction is established by the New York long-arm statute, N.Y.C.P.L.R. § 302.  Second, she argues that RICO's own provision for personal jurisdiction, 18 U.S.C. § 1965(b), authorizes the exercise of jurisdiction over Barrett.  I will address each contention in turn.

---

(1992).  While Thomas may lack standing to bring claims alleging injuries to other homeowners, she has sufficiently alleged that she was personally injured by the Defendants' conduct.  *See, e.g.*, Second Am. Compl. ¶¶ 44, 83, 306; *see also Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . .").

a.      *The New York Long-Arm Statute*

A defendant may be subject to the personal jurisdiction of a federal district court

if he "is subject to the jurisdiction of a court of general jurisdiction in the state where the district

court is located." Fed. R. Civ. P. 4(k)(1)(A); *see also Chloé v. Queen Bee of Beverly Hills, LLC*,

616 F.3d 158, 163 (2d Cir. 2010).  In the case of a non-domiciliary of the forum state, a court

generally makes a two-step inquiry to determine if personal jurisdiction is proper.  *See Chloé*,

616 F.3d at 163.  First, the court must determine whether jurisdiction would be proper under the

long-arm statute of the forum state, which in this case is New York.  *See id.*  "If the long-arm

statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction

comports with the Due Process Clause of the United States Constitution."  *Id.* at 164.

New York's long-arm statute authorizes personal jurisdiction over a non-

domiciliary defendant under two sets of circumstances that are relevant here.  First, if a

defendant "transacts any business within the state or contracts anywhere to supply goods or

services in the state."  N.Y.C.P.L.R. § 302(a)(1).  Second, if a defendant "commits a tortious act

without the state causing injury to person or property within the state" and other conditions are

satisfied.  *Id.* § 302(a)(3).  In both these instances, personal jurisdiction is authorized only for

causes of action that arise from the circumstances on which jurisdiction is premised.  *See id.*

§ 302(a) (authorizing personal jurisdiction for "a cause of action *arising from any of the acts*

*enumerated in this section*" (emphasis added)); *see also Agency Rent A Car Sys., Inc. v. Grand*

*Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).  For example, a defendant that transacts

business in New York is only subject to suit in New York under § 302(a)(1) for causes of action

that have a sufficient nexus to the New York business.  *See id.*; *see also Johnson v. Ward*, 829

N.E.2d 1201, 1202 (N.Y. 2005).  There must be "a 'substantial relationship' . . . between a

8

defendant's transactions in New York and a plaintiff's cause of action in order to satisfy the nexus requirement of [§ 302(a)]." *Johnson*, 829 N.E.2d at 1202.

Thomas claims that Barrett transacts business within the state, citing Barrett's interest in Net Director, which Thomas describes as "a private data sharing web site for lawyers and vendors," and its partnership with VendorScape, a computer software product that is used by lawyers in New York. Pl.'s Mot. for Sanctions 2–3, ECF No. 54-1. Even assuming that these facts constitute the transaction of business in New York, Thomas has failed to demonstrate any nexus between her claims and Barrett's New York business, let alone a "substantial relationship." *Johnson*, 829 N.E.2d at 1202; *see also, e.g.*, *Brandt v. Toraby*, 710 N.Y.S.2d 115, 117 (App. Div. 2000). Accordingly, jurisdiction may not be founded on § 302(a)(1).

Thomas has also failed to make a prima facie showing that Barrett committed tortious conduct outside New York that caused injury in New York. Her claims involve injury to herself or her property when she lived in Texas, not New York. Her subsequent move to New York does not permit personal jurisdiction over Barrett. *See Vaichunas v. Tonyes*, 877 N.Y.S.2d 204, 205 (App. Div. 2009) ("The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." (internal quotation marks and citations omitted)); *see also McGowan v. Smith*, 419 N.E.2d 321, 324 (N.Y. 1981). Thomas argues that Barrett's conduct caused injury to other people in New York. But assuming that were true, such that others might theoretically sue Barrett in New York, it would not establish personal jurisdiction over Thomas's own claims since they arise from Texas injuries.

Accordingly, the New York long-arm statute does not allow for personal jurisdiction over Barrett in this case.

b.     *RICO*

RICO contains its own personal jurisdiction provision.  *See* 18 U.S.C. § 1965(b); *see also PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 70–72 (2d Cir. 1998).  It provides that in a civil RICO action "in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof."  § 1965(b).  Although § 1965(b) permits personal jurisdiction to be established by nationwide service of a summons under some circumstances, it "does *not* provide for nationwide personal jurisdiction over *every* defendant in every civil RICO case, no matter where the defendant is found."  *PT United Can*, 138 F.3d at 71 (emphasis added).  Rather, to establish personal jurisdiction under § 1965(b), a plaintiff "must show that (1) the Court has personal jurisdiction as to at least one defendant based on minimum contacts, and (2) 'the ends of justice' so require."  *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, No. 01-CV-1574 (ILG), 2002 WL 719471, at *6 (E.D.N.Y. Mar. 1, 2002); *see also PT United Can*, 138 F.3d at 71–72.

The "ends of justice" requirement exists because "Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora."  *PT United Can*, 138 F.3d at 72.  Most courts to consider the issue have determined that this requirement permits "the exercise of 'personal jurisdiction if, otherwise, the entire RICO claim could not be tried in one civil action.'"  *Team Obsolete*, 2002 WL 719471, at *6 (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)).[6]

---

[6]     In addition, a plaintiff cannot insert a meritless RICO claim in a complaint as a means to obtain personal jurisdiction over a non-domiciliary defendant.  *See, e.g., Team Obsolete*, 2002 WL 719471, at *6.  I need not address whether Thomas has sufficiently alleged a RICO claim because, even assuming she has, § 1965(b) does not authorize the exercise of personal jurisdiction over Barrett in this Court.

I conclude that the ends of justice do not require the exercise of personal jurisdiction over Barrett by this Court. This case could be brought in the Southern District of Texas, where Thomas originally filed it. Thomas does not dispute Barrett's assertion that all the named Defendants are subject to personal jurisdiction there.

Thomas instead argues that she cannot bring this case in Texas because of safety concerns resulting from purported threats by Barrett. Thomas has provided almost no elaboration on what these threats were. The only detail she has provided is a statement that the threats involved "sending [a] witness list and motions to [Thomas's] New York address." Pl.'s Mem. of Law To Support Denial of Def. Barrett-Firm Mot. To Dismiss 7, ECF No. 46. Mailing a witness list and motions to Thomas in New York does not create legitimate safety concerns for her in Texas. To the extent there are any legitimate safety concerns, they can be adequately dealt with by the Texas court if Thomas refiles her case there.

B.    *Judicial Estoppel*

1.    *Standard of Review*

A defendant may raise an affirmative defense such as judicial estoppel on a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where the basis for that defense is established by the materials properly before the Court. *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 620 (S.D.N.Y. 2006); *see also Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). A court deciding a Rule 12(b)(6) motion may consider not only the complaint, but also any relevant documents that may be judicially noticed. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 293 n.4 (S.D.N.Y. 2002); *Chestnut v. Wells Fargo Bank, N.A.*, No. 10-CV-4244 (JS) (ARL), 2011 WL 838914, at *1 n.1 (E.D.N.Y. Mar. 2, 2011). A document filed in

another court may be judicially noticed, although it may be considered only to establish what

was filed, not the truth of the contents asserted in the filing. *Int'l Star Class Yacht Racing Ass'n*

*v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998); *Twentieth Century Fox Film*, 220

F. Supp. 2d at 293 n.4.

      2.    *Analysis*

      "The purpose of judicial estoppel is not to look for, or punish, outright lies, but 'to

protect the integrity of the judicial process by prohibiting parties from deliberately changing

positions according to the exigencies of the moment.'" *Adelphia Recovery Trust v. HBC Bank,*

*USA (In re Adelphia Recovery Trust)*, 634 F.3d 678, 696 (2d Cir. 2011) (quoting *New Hampshire*

*v. Maine*, 532 U.S. 742, 749–50 (2001)); *see also Bates v. Long Island R.R. Co.*, 997 F.2d 1028,

1037–38 (2d Cir. 1993). "Typically, judicial estoppel will apply if:  (1) a party's later position is

clearly inconsistent with its earlier position; (2) the party's former position has been adopted in

some way by the court in the earlier proceeding; and (3) the party asserting the two positions

would derive an unfair advantage against the party seeking estoppel." *Adelphia Recovery Trust*,

634 F.3d at 695–96 (internal quotation marks and citations omitted).  "[T]he proper focus is on

the objective conduct of a party or its counsel," rather than the party's or attorney's "subjective

intent." *Id.* at 696.

      A debtor seeking bankruptcy protection must disclose all of her assets, including

any pre-petition legal claims that the debtor has. *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538

F.3d 116, 122 (2d Cir. 2008); *see also* 11 U.S.C. § 521(a)(1)(B)(i).  This disclosure is "essential

to the proper functioning of the bankruptcy system." *Chartschlaa*, 538 F.3d at 122; *see also*

*Negron v. Weiss*, No. 06-CV-1288 (CBA), 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006).

Thus, "[c]ourts frequently invoke judicial estoppel to prevent a party who failed to disclose a

claim in bankruptcy proceedings from asserting that claim in a subsequent action." *Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03-CV-10254 (JFK), 2008 WL 4129620, at *5 (S.D.N.Y. Sept. 4, 2008), *aff'd sub nom.*, *Adrogué Chico S.A. v. FleetBoston Fin. Corp.*, 427 F. App'x 43 (2d Cir. 2011); *see also Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010) ("[E]very circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case.").

The elements of judicial estoppel are satisfied in this case.  First, Thomas has taken clearly inconsistent positions.  In her bankruptcy proceeding, she did not list the legal claims she now asserts among her assets.  In fact, she stated that she did not have any non-exempt assets.  She therefore at least implicitly took the position that she had no legal claims of any value.  *See, e.g.*, *Negron*, 2006 WL 2792769, at *3–4; *see also Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) ("A debtor's failure to list a claim in the 'mandatory bankruptcy filings is tantamount to a representation that no such claim existed.'" (quoting *Superior Crewboats Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004))).  Now, she asserts that she does have such claims.  Plainly, these positions cannot both be correct.  *See Guay v. Burack*, 677 F.3d 10, 17 (1st Cir. 2012) ("[I]t is well-established that a failure to identify a claim as an asset in a bankruptcy proceeding is a prior inconsistent position that may serve as the basis for application of judicial estoppel . . . .").

The fact that Thomas commenced adversary proceedings in the bankruptcy court does not reconcile her positions then and now.  She commenced those proceedings just days before the bankruptcy court granted her a discharge.  Moreover, the complaints in the adversary proceedings were insufficient to inform the bankruptcy court that she possessed the valuable pre-

petition claims she asserts now.  In one adversary proceeding, Thomas sought to declare a lien on her property to be void; in the other, she sought to bring a class action alleging unlawful fee-splitting between Barrett and the Dolan Defendants.  She did not assert the various statutory and common law claims she brings in this case.  These complaints were therefore insufficient to remedy the nondisclosure of her claims in her bankruptcy petition and schedules.  *Cf. Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 209–10 (5th Cir. 1999) (commencement of adversary proceeding seeking return of inventory was insufficient to defeat judicial estoppel because it failed to give notice that debtor was claiming damages of millions of dollars).

Second, Thomas's prior position was adopted by the bankruptcy court when it granted her a discharge.  *See Negron*, 2006 WL 2792769, at *3 ("When an assertion in a bankruptcy proceeding is at issue, the . . . requirement [that the court adopted the prior inconsistent position] is usually fulfilled when the bankruptcy court confirms a plan pursuant to which creditors release their claims against the debtor."); *see also Superior Crewboats*, 374 F.3d at 335 (5th Cir. 2004).  Finally, her inconsistent positions have provided her with an unfair advantage since she has received the benefit of a discharge of her debts while still possessing the ability to recover on her claims in full.  *See Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) ("The ever present motive to conceal legal claims and reap the financial rewards undoubtedly is why so many of the cases applying judicial estoppel involve debtors-turned-plaintiffs who have failed to disclose such claims in bankruptcy.").

Moreover, Thomas's failure to disclose these claims in her bankruptcy proceeding prior to discharge cannot be deemed to be the result of inadvertence or mistake.  Courts are generally willing to excuse the application of judicial estoppel on such grounds only where the debtor had "no knowledge of the claims or no motive to conceal the claims."  *Ibok v. SIAC-*

14

*Sector Inc.*, No. 05-CV-6584 (GBD) (GWG), 2011 WL 293757, at *7 (S.D.N.Y. Feb. 2, 2011)

(internal quotation marks and citations omitted), *report and recommendation adopted by* 2011

WL 979307 (S.D.N.Y. Mar. 14, 2011), *aff'd*, No. 11-1494-CV, 2012 WL 1701323 (2d Cir. May

16, 2012); *see also Superior Crewboats*, 374 F.3d at 335.   Neither faulty legal advice nor

ignorance of the law excuses nondisclosure.  *See Alli v. Bos. Mkt. Co.*, No.10-CV-4 (JCH), 2011

WL 3924246, at *3 (D. Conn. Sept. 7, 2011); *see also Eastman*, 493 F.3d at 1159 ("Gardner's

assertion that he simply did not know better and his attorney 'blew it' is insufficient to withstand

application of  [judicial estoppel]."); *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006)

("[A] debtor in bankruptcy is bound by her own representations, no matter why they were made

. . . ."); *cf. Adelphia Recovery Trust*, 634 F.3d at 696 (judicial estoppel inquiry focuses on

objective factors rather than subjective intent).

   Thomas's argument that she lacked knowledge of her claims against the Dolan

Defendants is unpersuasive.  She focuses on what she knew when she filed her bankruptcy

petition on December 3, 2010.[7]  But that is not the relevant date for assessing Thomas's

knowledge of her claims.   While the bankruptcy case remained open, Thomas had both the

ability and the obligation to amend her filings to disclose any assets she had previously omitted.

*See* Fed. R. Bankr. P. 1009(a) ("A voluntary petition, list, schedule, or statement may be

amended by the debtor as a matter of course at any time before the case is closed."); *Moses*, 606

F.3d at 793 ("[A] debtor is under a duty both to disclose the existence of pending lawsuits when

he files a petition in bankruptcy and to amend his petition if circumstances change during the

course of the bankruptcy.").   The bankruptcy court could have then taken those assets into

---

[7]   Thomas's assertion that when she filed her bankruptcy petition on December 3, 2010, she was unaware of the full extent of her claims is questionable.  She had disputed the validity of the notices she challenges here as early as November 5, 2010, and filed a lawsuit in October 2010 asserting similar allegations to those she raises now.

account in addressing her petition.  Thus, the relevant date for assessing Thomas's knowledge of her claims is March 1, 2011, the date the bankruptcy court granted her a discharge and closed the case.

The record demonstrates that Thomas was aware of her claims against the Dolan Defendants well before that date.  On January 3, 2011, she filed an amended complaint in the Texas lawsuit that all parties deem to be a predecessor of her action here.  But even though she filed an amended schedule of assets a few weeks later on January 25, 2011, she failed to disclose her claims to the bankruptcy court then or at any time prior to the discharge.

As noted above, Thomas also had a motive to conceal her claims.  By doing so, she could pursue them free and clear of any claims by creditors after gaining the benefit of a discharge.  *See Superior Crewboats*, 374 F.3d at 336 ("The Hudspeaths had the requisite motivation to conceal the claim as they would certainly reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors."); *see also Eastman*, 493 F.3d at 1159.  Thus, while I need not, and do not, conclude that Thomas acted in bad faith, I do conclude that the application of judicial estoppel should not be excused due to inadvertence or mistake.

Thomas's remaining arguments as to why judicial estoppel should not apply are unpersuasive.  First, she argues that she could not list her claims as assets because the lawsuit she had filed in the Texas district court was sealed.  However, even assuming the sealed status of the lawsuit posed an obstacle to disclosure, the district court unsealed the case on January 31, 2012.  Despite this, Thomas failed to amend her schedule of assets prior to the bankruptcy court's discharge.

Second, Thomas asserts that her claims arose post-petition and therefore are not property of the bankruptcy estate that had to be disclosed in the bankruptcy proceeding.  But her claims arise almost entirely from pre-petition conduct – the alleged mailing of fraudulent documents on October 28, 2010, and the alleged filing of fraudulent documents on November 8, 2010 – and therefore constitute property of the bankruptcy estate regardless of when Thomas learned of them or formally asserted them.  *See In re Salander*, 450 B.R. 37, 45 (Bankr. S.D.N.Y. 2011) ("Property of the estate includes all causes of action that the debtor had a right to bring at the time the bankruptcy was filed, including causes of action that the debtor was not aware of prior to the bankruptcy filing." (internal quotation marks and citation omitted)); *Stanley v. Cmty. Bank, N.A.*, No. 08-CV-925 (GLS) (RFT), 2009 WL 261333, at *2 (N.D.N.Y. Feb. 4, 2009) ("Property which passes to the estate includes legal claims which *accrued* to the debtor pre-petition or as a result of the petition." (emphasis added)); *Hopkins v. Foothill Mountain, Inc. (In re Hopkins)*, 346 B.R. 294, 303 (Bankr. E.D.N.Y. 2006) ("[I]t is well settled that prepetition causes of action are assets included within the meaning of property of the estate."); *see also* 11 U.S.C. § 541(a).

To the extent that some of her claims involve some post-petition conduct, such as reporting her pre-petition debt to credit bureaus, they are "'sufficiently rooted in the pre-bankruptcy past and so little entangled with [Thomas's] ability to make an unencumbered fresh start that [they] should be regarded as "property"' of the estate."  *Stanley*, 2009 WL 261333, at *2 (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)); *see also Jackson v. Novak (In re Jackson)*, 593 F.3d 171, 176–77 (2d Cir. 2010); *O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197, 203–04 (3d Cir. 2000); *Salander*, 450 B.R. at 46–47; *Correll v. Equifax Check Servs., Inc.*,

17

234 B.R. 8, 11 (D. Conn. 1997) (cause of action arising from collection letters sent post-petition was property of the estate).[8]

I therefore conclude that the claims against the Dolan Defendants should be dismissed on the ground of judicial estoppel.[9]

CONCLUSION

For the reasons stated above, Barrett's motion to dismiss for lack of personal jurisdiction is granted and the Dolan Defendants' motion to dismiss is granted on the ground of judicial estoppel.[10]

So ordered.

John Gleeson, U.S.D.J.

Dated: July 11, 2012
        Brooklyn, New York

---

[8]     The allegations in the second amended complaint of post-petition conduct involve defendants other than the Dolan Defendants. The second amended complaint alleges J.P. Morgan Chase N.A. reported the debts to the credit bureaus, not the Dolan Defendants. *See* Second Am. Compl. ¶¶ 57–58. And it alleges that Barrett filed a fraudulent assignment of a deed of trust on December 10, 2010, not the Dolan Defendants. *See id.* ¶¶ 216(g), 217(e). Thus, even if these claims were not judicially estopped, they would be dismissed as against the Dolan Defendants.

[9]     Some courts have dismissed claims that were undisclosed in a prior bankruptcy proceeding on a different ground: lack of standing. *See, e.g., Coffaro v. Crespo*, 721 F. Supp. 2d 141, 148 (E.D.N.Y. 2010). Because an undisclosed pre-petition claim "remains the property of the bankruptcy estate even after discharge, . . . the debtor lacks standing to pursue it." *Id.* Although the Dolan Defendants have not raised this standing theory, it provides an alternative basis to dismiss Thomas's claims.

[10]    On June 22, 2012, Thomas filed motions for partial summary judgment, *see* ECF Nos. 75, 79. In light of this decision dismissing the action, the motions for partial summary judgment are denied as moot.

18